**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
DELAWARE**

| | |
|---|---|
| **EARIN AB,** | Civil Action No.: |
| Plaintiff, | |
| v. | **TRIAL BY JURY DEMANDED** |
| **SKULLCANDY, INC.,** | |
| Defendant. | |

## COMPLAINT

Plaintiff Earin AB files this Complaint against Defendant Skullcandy, Inc. ("Skullcandy").

## NATURE OF THE CASE

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.*, including 35 U.S.C. § 271, for infringement of United States Patent No. 9,402,120 (the "'120 Patent"). Attached as Exhibit A.

2.      Defendant Skullcandy has been and is making, using, selling, offering for sale, and/or importing wireless earbud products that practice the inventions claimed in the '120 Patent, including without limitation the Push 540 Open, Method 540 ANC, Smokin' Buds, Push Active, and EcoBuds products, together with their color variants and substantially similar versions (collectively, the "Accused Products").

3.      The Accused Products include recently released Skullcandy earbuds that advertise multipoint pairing and automatic reconnection features, as well as additional Skullcandy earbuds that do not advertise multipoint pairing but nonetheless practice the claimed charger-detect, true-

1

wireless-stereo reconnection, solo/mono operation, and host-device pairing functionality of the '120 Patent.

Earin seeks damages adequate to compensate it for Skullcandy's infringement of the '120 Patent, together with prejudgment and post-judgment interest, costs, and all other relief available under law.

## PARTIES

4.    Backed by the Kickstarter community in 2014, Earin launched the original true wireless stereo ("TWS") M-1 earbuds on October 6, 2015. Earin has for years been known as an innovator of Bluetooth-enabled wireless earphone technologies.

5.    Earin is a Swedish corporation with a principal place of business at Dockgatan 27, 211 12 Malmö, Sweden.

6.    On information and belief, Skullcandy is a Delaware corporation with a principal place of business at 6301 N. Landmark Dr., Park City, Utah.

## JURISDICTION & VENUE

7.    This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.    This Court has personal jurisdiction over Skullcandy because Skullcandy is a Delaware corporation and therefore has a continuous presence in, and systematic contacts with, this District.

10.    On information and belief, Skullcandy has committed and continues to commit acts of infringement in this Judicial District, and the claims addressed in this Complaint arise out of

2

and relate to such acts, including at least by making, using, offering for sale, selling, and/or importing the Accused Products in or into this District.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Skullcandy is incorporated in this District and Skullcandy's infringing activities have occurred and are occurring in this District.

## RELATED ACTION

12.     Earin previously filed a related action against Skullcandy captioned *Earin AB v. Skullcandy, Inc.*, No. 24-cv-275-RGA (D. Del.). In that action, Earin accused a defined set of Skullcandy earbud products based on their multipoint-pairing-capable functionality.

13.     This action, by contrast, is based on different accused Skullcandy products and later acts of infringement than those at issue in the prior case. The products accused here were not previously asserted as accused products in the earlier action. This action also includes newly released Skullcandy products that entered the market after the earlier case was framed.

14.     In addition, this action includes products that present materially different claim-relevant facts from those implicated in the prior case, including products that do not rely on the multipoint-pairing functionality that formed the basis for the accused products in the earlier action. Earin therefore alleges that this action arises from different transactional facts, concerns different accused instrumentalities, and is not duplicative of the prior action.

## EARIN'S U.S. PATENT NO. 9,402,120

15.     On July 26, 2016, the United States Patent and Trademark Office duly and legally issued United States Patent No. 9,402,120, entitled "Wireless Earbuds." A true and correct copy

3

of the '120 Patent is attached as Exhibit A. The priority date of the '120 Patent is no later than September 5, 2014.

16.    The '120 Patent is directed, inter alia, to a wireless earbud system in which the earbud housing includes a loudspeaker element, a rechargeable battery, and at least one main printed circuit board, such that when an earbud is disconnected from a charger it exits an idle mode, enters an operational mode, attempts to reconnect to another earbud for true wireless stereo operation, falls back to mono operation if that connection is not achieved, and reconnects or initiates pairing procedures with a wireless audio streaming host device.

17.    Earin is the owner, by assignment, of all right, title, and interest in and to the '120 Patent, including the right to sue for and recover damages for past, present, and future infringement.

18.    The '120 Patent is valid and enforceable under the patent laws of the United States.

## COUNT I:
## INFRINGEMENT OF THE '120 PATENT

19.    Earin incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

20.    Skullcandy has made, used, offered for sale, sold, and/or imported the Accused Products that incorporate one or more of the inventions claimed in the '120 Patent within the United States.

21.    Skullcandy has infringed and continues to infringe, either literally or under the doctrine of equivalents, one or more claims of the '120 Patent, including at least claim 20, in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing the Accused Products, including without limitation the Push 540 Open, Method 540 ANC, Smokin' Buds, Push Active, and EcoBuds products.

22.     Claim 20 of the '120 Patent provides

[Preamble] A wireless earbud having an idle mode and an operational mode, the wireless earbud comprising:

[A] an earbud housing;

[B] a loudspeaker element;

[C] a rechargeable battery; and

[D] at least one main printed circuit board having disposed thereon circuitry for wireless radio communication, audio codec and earbud operation control;

[E] wherein the circuitry is configured for automatic power preservation by: detecting connection of said battery to a charger and in response entering the idle mode, wherein existing connections to a second wireless earbud and to a wireless audio streaming host device will be disconnected; and

[F] detecting disconnection of said battery from said charger and in response entering the operational mode by: attempting a true wireless stereo, TWS, reconnection with the second wireless earbud;

[G] if the attempt is successful, operating the wireless earbud as a TWS audio receiver and otherwise operating the wireless earbud as a mono wireless audio receiver;

[H] if operated as a TWS audio receiver, determining whether the wireless earbud is a master device or a slave device with respect to the second wireless earbud;

[I] if the wireless earbud is determined to be a master device, attempting to reconnect with the wireless audio streaming host device and other known wireless audio streaming host devices if applicable; and

[J] if reconnection with the wireless audio streaming host device fails, initiate a pairing procedure with the wireless audio streaming host device and other known wireless audio streaming host devices if applicable.

23.    Based on publicly available information, Skullcandy product materials, Skullcandy support materials, and Earin's pre-suit investigation, the Accused Products meet all elements of at least claim 20 of the '120 Patent.

24.    Regarding the preamble, and to the extent it is limiting, the Accused Products are wireless earbuds having an idle mode and an operational mode. Each accused product is sold as a true wireless earbud product that includes earbuds and a charging case or charging dock. Skullcandy advertises Push 540 Open as "Open-Ear True Wireless Earbuds," Method 540 ANC as "True Wireless Earbuds," Smokin' Buds as "True Wireless In-Ear," Push Active as a "true wireless earbud," and EcoBuds as "True Wireless In-Ear."

25.    Limitations [A] through [D] require an earbud housing, a loudspeaker element, a rechargeable battery, and at least one main printed circuit board with circuitry for wireless radio communication, audio codec, and earbud operation control. The Accused Products satisfy these limitations. Skullcandy advertises dynamic drivers or audio drivers for the accused earbuds, Bluetooth connectivity (including Bluetooth 5.2 or 5.3), rechargeable power through a charging case or charging dock, microphones, and call/track/media controls. On information and belief, each Accused Product includes at least one main printed circuit board carrying the Bluetooth radio, codec, processor, and control circuitry needed to provide those features.

26.    For example, Skullcandy advertises Push 540 Open as including 12 mm dynamic drivers, Bluetooth 5.3 LE Audio, call/track/volume control, and a charging case. Skullcandy advertises Method 540 ANC as including Bose audio drivers, Bluetooth 5.3, call/track/media controls, use-either-bud-solo capability, auto on/connect capability, and a charging case. Skullcandy advertises Smokin' Buds as including Bluetooth, a charging case, touch controls, microphones in each earbud, use-either-bud-solo capability, and auto on/connect. Skullcandy

advertises Push Active as including Bluetooth 5.2, auto on/connect, and a charging case. Skullcandy advertises EcoBuds as including Bluetooth 5.2, a charging dock, touch controls, use-either-bud-solo capability, and auto on/connect.

27.     Limitation [E] requires circuitry configured for automatic power preservation by detecting connection of the battery to a charger and, in response, entering an idle mode. The Accused Products satisfy this limitation. The accused earbuds are designed to be placed in a charging case or charging dock for charging, and to power on or auto-connect when removed. Skullcandy's support materials for Push Active explain that when the earbuds are in the charging case, opening the lid auto-powers on the earbuds, and removing them from the case produces power-on and connection prompts. Skullcandy's support materials for EcoBuds explain that when both earbuds are in the charging dock and then removed, they auto power on and begin the pairing process. On information and belief, when the earbuds are connected to their chargers, they enter an idle or power-preservation state and disconnect existing wireless links until they are removed from the charger.

28.     Limitations [F] and [G] require detecting disconnection from the charger, entering operational mode, attempting TWS reconnection with the second earbud, and operating as a TWS receiver if successful or a mono receiver if not. The Accused Products satisfy these limitations. Skullcandy advertises and supports solo-mode operation across the Accused Products. Skullcandy's support materials for Push 540 Open explain that a user can remove either earbud from the charging case, that the selected earbud will pair and function normally, and that removing the other bud causes audio to begin streaming in stereo mode. Skullcandy similarly states that both the left and right Smokin' Buds earbuds can be used in solo mode, that both the left and right EcoBuds earbuds can be used in solo mode, and that Push Active can operate with either earbud

in solo mode. Skullcandy also advertises Method 540 ANC as providing "Use Either Bud Solo." These features reflect the claimed attempt to reconnect the earbuds for true wireless stereo operation and the fallback to mono operation when only one earbud is active or when the second-earbud connection is not established.

29.    Limitations [H] and [I] require that, if the earbud is operating as a TWS audio receiver, it determines whether it is a master or slave device relative to the second earbud and, if it is the master device, attempts to reconnect with the wireless audio streaming host device and other known host devices if applicable. The Accused Products satisfy these limitations. On information and belief, when the accused earbuds establish a TWS connection, one earbud acts as the primary or master earbud for host-device communication while the other earbud acts as a secondary or slave earbud. This is reflected in the products' ability to transition between solo mode and stereo mode and to reconnect to a previously paired host device. Push 540 Open and Method 540 ANC further advertise multipoint pairing. Skullcandy's support materials for Push 540 Open explain that the earbuds can be connected to two devices at once and will pair to the two most recently paired devices every time they are powered on. Skullcandy support materials for Method 540 ANC likewise state that, each time the earbuds are powered on, they pair to the two most recently paired devices. Those features satisfy, at minimum, the requirement to reconnect with the host device and, where applicable, other known host devices.

30.    Limitation [J] requires that, if reconnection with the wireless audio streaming host device fails, the earbud initiate a pairing procedure with the wireless audio streaming host device and other known devices, if applicable. The Accused Products satisfy this limitation because, when an earbud attempts to reconnect with a previously paired host device and that reconnection fails, the earbud initiates a pairing procedure by entering a discoverable/pairing state and advertising

itself for connection to the previously paired host device and other known devices, if applicable. On information and belief, this includes transmitting Bluetooth discovery/pairing signaling, including, for example, an "Inquiry Result" message or similar advertising/discovery message defined by the Bluetooth specification. Thus, upon failed reconnection, the earbud itself initiates the claimed pairing procedure.

31. Accordingly, Skullcandy has directly infringed and continues to directly infringe one or more claims of the '120 Patent, including at least representative claim 20, in violation of 35 U.S.C. § 271(a) by, without authority, making, using, offering for sale, selling, and/or importing the Accused Products in the United States.

32. Skullcandy's infringing activities have been and continue to be without authority or license under the '120 Patent.

33. On information and belief, Skullcandy's infringement of the '120 Patent has been and continues to be willful. At the latest, Skullcandy became aware of the '120 Patent and Earin's infringement allegations no later than the filing and service of *Earin AB v. Skullcandy*, Inc., No. 24-cv-275-RGA (D. Del.). Despite that knowledge, Skullcandy has continued its infringing conduct by making, using, offering for sale, selling, and importing infringing earbud products, and by releasing additional products that infringe claim 20 of the '120 Patent. On information and belief, Skullcandy has done so knowingly and deliberately, and in conscious disregard of Earin's patent rights, rendering this an exceptional case and entitling Earin to enhanced damages under 35 U.S.C. § 284.

34. Earin has suffered and continues to suffer damages as a direct and proximate result of Skullcandy's infringement of the '120 Patent and is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

9

## JURY DEMAND

35.     Pursuant to Federal Rule of Civil Procedure 38(b), Earin AB demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Earin AB respectfully requests judgment against Skullcandy as follows:

A.      that this Court adjudge that Skullcandy infringes the '120 Patent;

B.      that this Court ascertain and award Earin AB damages under 35 U.S.C. § 284 sufficient to compensate for Skullcandy's infringement, including but not limited to infringement occurring before the filing of this lawsuit;

C.      that this Court award Earin prejudgment and post-judgment interest as allowed by law;

D.      that this Court award Earin its costs and such other and further relief as the Court deems just and proper.


Dated: March 13, 2026                              Respectfully submitted,

*Of Counsel:*                                      FARNAN LLP

                                                   */s/Michael J. Farnan*
                                                   Brian E. Farnan (Bar No. 4089)
Cristofer I. Leffler, WA Bar No. 35020             Michael J. Farnan (Bar No. 5165)
**FOLIO LAW GROUP PLLC**                           919 N. Market St., 12th Floor
1200 Westlake Ave. N., Suite 809                   Wilmington, DE 19801
Seattle, WA 98109                                  (302) 777-0300
Tel: (206) 880-1802                                bfarnan@farnanlaw.com
Email: cris.leffler@foliolaw.com                   mfarnan@farnanlaw.com

                                                   *Attorneys for Plaintiff Earin AB*

10